220 N.J. Super. 425 (1987)
532 A.2d 735
JULIO NEGRON, APPELLANT,
v.
NEW JERSEY DEPARTMENT OF CORRECTIONS, ET AL, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted June 10, 1987.
Decided July 29, 1987.
*427 Before Judges DEIGHAN and HAVEY.
Julio Negron, appellant, pro se (Lloyd Johnson, substitute counsel, on the brief).
*428 W. Cary Edwards, Attorney General of New Jersey, attorney for respondents (Michael E. Kahn, Deputy Attorney General, on the letter brief).
The opinion of the court was delivered by DEIGHAN, J.A.D.
Petitioner Julio Negron, an inmate in the Trenton State Prison, appeals from an adjudication finding him guilty of offering an official or a staff member a bribe or anything of value in violation of N.J.A.C. 10A:4-4.1(a).751. Specifically, petitioner was charged with participation in a drug-trafficking operation within the prison. His sanction was a 15-day detention with credit for time already served in pre-hearing detention, 365 days in administrative segregation, 270 days loss of commutation time and the matter was referred to the prosecutor. On an administrative appeal, an assistant Superintendent upheld the hearing officer's decision, determined that the hearing officer complied with the Department of Corrections (DOC) standards and found that the decision was based upon substantial evidence.
On this appeal Negron presents the following issues:
POINT I Mr. Negron Was Denied All Procedural Due Process Protections In The Disposition Of His Charge By The Agency Involved.
POINT II The Level Of Evidence Produced At The Hearing Did Not Support The Conclusion Reached  And Was Not In Conformity With The Applicable Law. (Latter Part Not Raised Below)
The following facts are the basis of the disciplinary action. On February 21, 1986, during a joint investigation by the State Police and Corrections Department, a prison staff member, Charles Feggans, confessed to his involvement in a prison-wide drug trafficking operation. Feggans confessed that while using the alias of Harry Hunt or Charlie Wilson, he received funds from various inmates for the purpose of merchandising drugs within the prison. Feggans named appellant as one of the inmates. The law enforcement officials continued the investigation. A search of Feggans' residence produced a list of inmates *429 who owed Feggans money. Negron's name appeared on that list as owing $200.
The investigation was completed on May 9, 1986. On May 10, 1986, appellant was charged and on the same date he denied the charge before an investigating officer who, at the same time, granted appellant's request for substitute counsel to assist him at the hearing. Lloyd Johnson, an inmate, thereafter assisted appellant as substitute counsel.
On May 12, 1986, within 72 hours of his placement in prehearing detention, the hearing officer commenced the hearing, but then postponed it so he could examine all the evidence. The hearing recommenced on May 16 after which Negron was found guilty of the charge against him.

I
Both parties acknowledge that prison disciplinary hearings are not part of a criminal prosecution, and therefore the full panoply of rights due a criminal defendant does not apply to disciplinary hearings. Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974); Avant v. Clifford, 67 N.J. 496, 522 (1975).
Under Point I, Negron sets forth a variety of procedural rights under the general heading that he "was denied all procedural due process protections." Under this broad contention we have attempted to segregate and analyze his specific claims which appeared to fall in the following categories:
(1) He claims that he did not receive 48 hours notice of the charges against him in violation of N.J.A.C. 10A:4-9.2. The record indicates that Negron received notice of his disciplinary report on May 10, 1986, only 24 hours subsequent to the completion of the investigation of the charges against him. Also, "[f]ailure to adhere to any of the time limits prescribed by this subject chapter [disciplinary procedures] shall not mandate the dismissal of a disciplinary charge." N.J.A.C. 10A:4-9.9. Negron was not prejudiced in any way.
*430 (2) Negron contends there was a violation of his "basic right" to have an "impartial tribunal hear and adjudicate the charge against him." An impartial hearing tribunal need not be "neutral and detached" or disassociated from the administrative process as such in order to achieve procedural fairness and impartiality. Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); accord Avant v. Clifford, 67 N.J. at 525; see Wolff v. McDonell, 418 U.S. at 570-71, 94 S.Ct. at 2981-82.
(3) Negron was denied the opportunity to cross-examine Barney Dyrnes who prepared the disciplinary report, Charles Feggans, the staff member involved in the drug trafficking, the individual who typed the list of inmates involved in the drug trafficking and the notary of Feggans' statement, James West.
The hearing officer is given broad discretion to refuse a request for cross-examination and confrontation, N.J.A.C. 10A:4-9.14(a). Here, cross-examination of the individuals requested may have subjected them to possible physical retaliation. See Avant, 67 N.J. at 529-30.
Confrontation and cross-examination present [great] hazards to institutional interests. If confrontation and cross-examination of those furnishing evidence against the inmate were to be allowed as a matter of course, as in criminal trials, there would be considerable potential for havoc inside the prison walls.... We think that the Constitution should not be read to impose the procedure at the present time and that adequate bases for decision in prison disciplinary cases can be arrived at without cross-examination. [Wolff, 418 U.S. at 567-68, 94 S.Ct. at 2980-81]
Accord Baxter v. Palmigiano, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976) (denial of counsel and right of confrontation to inmates at a State Prison Disciplinary Proceeding did not violate Fifth and Fourteenth Amendments).
(4) He further contends the "sanctions imposed upon him were far in excess of those that were imposed upon the 70-odd individuals who had been housed at Trenton State Prison." Initially it is not required that sentences of prisoners or defendants be equal or uniform, and the circumstances surrounding each individual case, as acknowledged by Negron, must be analyzed. He contends that "[e]ach of [the 70-odd *431 individuals] were disciplined with a sanction of loss of good time credits of 180 days, yet [he] received a sanction of 270 days loss of time credits" which he claims is a 50% increase over others. Statistically, Negron is wrong. See, e.g. Joseph Jacob whose sanctions were 15 days detention with credit for time served, 270 days loss of commutation time, and 365 days confinement to administrative segregation. Moreover, under N.J.A.C. 10A:4-5.1(a) Negron could have received up to 365 days loss of commutation time instead of the 270 days which were imposed.
In conjunction with this argument Negron maintains that "he did not meet any of the eight criteria that must be considered" under N.J.A.C. 10A:4-10.1 for prehearing detention.
N.J.A.C. 10A:4-10.1(a) provides, among other things, that prehearing detention shall be deemed necessary where it appears that if an inmate remained at his existing housing status, he would constitute a threat to other inmates, or the orderly operations of the correctional facility. The widespread drug trafficking at the Trenton State Prison has resulted in the beating and stabbing of inmates. To insure the personal safety of all individuals, including witnesses, the prison officials, in their discretion, determined that Negron should be placed in prehearing detention. We find no abuse of discretion.
(5) Negron complains because the hearing was "not recorded verbatim but only as the individual hearing officer [deemed] necessary to commit [sic] to a record," citing N.J.A.C. 1:1-3.3(a) regarding conduct of contested cases.
There is no requirement for verbatim recording of prison disciplinary hearings. N.J.A.C. 10A:4-9.23(a), which is specifically applicable to prison disciplinary hearings, merely requires a written statement by the hearing officer which includes the evidence relied upon, the decision and the reason for the disciplinary action taken, the reason for refusing to call a witness or to disclose items of evidence and the reason for the denial of cross examination. The regulations have been reviewed and *432 approved in Avant, 67 N.J. at 533. See Wolff v. McDonnell, 418 U.S. at 563-64, 94 S.Ct. at 2978-79.
(6) Negron contends that his substitute counsel's request for copies of documentary evidence was denied by the hearing officer.
Negron was offered Dyrnes' disciplinary report, Feggan's statement, the business remit slip and check payable to Harry Hunt and various lists of the names of inmates who sent Feggans money. His substitute counsel submitted two pages of objections and statements. We are not informed as to what particular statements were not furnished and therefore cannot evaluate whether they should have been supplied, whether they were material and whether Negron was prejudiced.
(7) Negron contends that the disciplinary decision was only supported by hearsay and not based upon substantial evidence as required by N.J.A.C. 10A:4-9.15(a). He concludes that the level of evidence produced at the hearing did not support the conclusion reached.
Although hearsay evidence is permitted in administrative hearings, N.J.S.A. 52-14B-10(a); Weston v. State, 60 N.J. 36, 50-51 (1972), an adjudication may not be based solely on hearsay. Id. at 51. The decision must be supported by a residuum of legal and competent evidence. Ibid. at 51. We note that the residuum rule has never been applied to prison disciplinary hearings which "is not part of a criminal prosecution and thus the full panoply of rights to a defendant in such a proceeding does not apply." Morrissey v. Brewer, 408 U.S. at 480, 92 S.Ct. at 2600. Accord, Avant, 67 N.J. at 522. Cf. St. Dept. of Law & P. Saf. v. Merlino, 216 N.J. Super. 579 (App.Div. 1987) (residuum rule was held inapplicable to an order precluding career offenders from casino premises). The unique problems of prison disciplinary hearings concerning institutional and personal security may be even more compelling to exclude the residuum rule.
*433 There is, moreover, precedent in the federal courts for the use of hearsay evidence alone to establish a case. Richardson v. Perales, 402 U.S. 389, 402, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (hearsay could constitute substantial evidence of non-disability under Social Security Act); Smith v. Rabalais, 659 F.2d 539 (5th Cir.1981) (hearsay testimony of corrections officer relaying information provided by confidential informant sufficient to establish guilt in inmate disciplinary case).
In Smith an inmate was charged with selling narcotics. The charge was solely based on information an officer had received from a confidential informant. The officer refused to pinpoint the confidential informant or to describe the specific circumstances of the drug transaction. Id. at 541. Smith claimed that his disciplinary decision was not based upon substantial evidence. Id. at 542. The Court held that inmates' due process rights are subject to restrictions when balanced against the needs of the prison. Id. at 542-43, citing Wolff, supra, 418 U.S. at 566, 94 S.Ct. at 2979. The court further held that, considering the limitations imposed by prison security and personal safety, the officer's testimony was sufficient. Id. at 544.
Negron lists the following documents which were produced in evidence at the disciplinary hearing:
1) The alleged statement of Mr. Feggans.
2) The piece of paper supposedly confiscated from the home of Mr. Feggans on the date of 21 Feb. 1986.
3) The copy of the business [sic] remit made out by Mr. Negron in favor of one Harry Hunt in the amount of $200.00.
4) The alleged statement of Mr. Feggans given on 21 Feb. 1986 with the sixteen names of prisoners in which Mr. Negron was not mentioned at all.
5) The listings of names garnered by the business office of the prison from their records.
6) The prehearing detention report authorizing the placement of Mr. Negron in such status.
He contends that the above documents were "hearsay in nature." This contention is incorrect. Items 1 and 4, the statements of Feggans, even though hearsay, are admissible into *434 evidence in contested hearings as declarations against interest. Evid.R. 63(10). A declaration against interest is considered inherently trustworthy because the declarant would not make a declaration contrary to his best interest unless it was truthful. State v. Phelps, 96 N.J. 500, 511 (1984). Likewise, Item 3, the copy of the records made out of Negron's account to Harry Hunt, and the list of names from the business office, records of the Trenton State Prison, are admissible as business entries under Evid.R. 63(13). See Matter of Scioscia, 216 N.J. Super. 644, 654 (App.Div. 1987). No question has been raised as to the authenticity of these records.
From our review of the record, all other issues of law raised by this appeal are clearly without merit. R. 2:11-3(e)(1)(E).
Affirmed.