751 A.2d 1094 (2000)
331 N.J. Super. 353
Robert K. DECKER, Appellant,
v.
NEW JERSEY DEPARTMENT OF CORRECTIONS, Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted April 19, 2000.
Decided June 6, 2000.
Robert K. Decker, appellant pro se.
John J. Farmer, Jr., Attorney General, for respondent (Joseph P. Barrett, Deputy Attorney General, on the brief).
Before Judges STERN, WEFING and STEINBERG.
The opinion of the court was delivered by STERN, P.J.A.D.
Appellant Robert Decker, an inmate of East Jersey State Prison, appeals from disciplinary sanctions imposed on him for tampering with or blocking a locking device while leaving the institution's mess hall on September 21, 1999, in violation of N.J.A.C. 10A:4-4.1(a)*.154. He claims that the hearing officer improperly denied his request "to cross examine the two witnesses before the disciplinary officer and to confrontation with the reporting officer."
The "Adjudication of Disciplinary Charge" form, which recorded the disposition of the hearing officer, refers to the reports of the charging or "reporting" officer, *1095 Senior Corrections Officer Dirmeitis, as the only evidence in support of the charge.[1] The Department of Corrections (DOC) contends that the request to confront and cross-examine the officer who charged Decker with the violation was properly denied.
In the words of the DOC:
On September 21, 1999, Decker was involved in an incident in which he intentionally tampered with a gate in the correctional facility causing a corrections officer to lose control of the flow of inmates. On this particular day, the officers were attempting to empty the mess hall from the noon meal. When Decker came out, he pushed the exit gate sideways with his foot and hand, causing the gate to thrust back and open towards Senior Corrections Officer Dirmeitis. This intentional act jeopardized the security of the facility as it undermined the officer's ability to control the flow of inmates out of the mess hall.
The "Adjudication of Disciplinary Charge" report reflects that the hearing officer found that inmate Decker pushed the door open with his hand and foot and rejected the testimony of Decker and his witnesses that "the incident was an accident." According to the adjudication report, "the officer's reports do not indicate this was an accident."
We do not understand how a hearing officer can reject testimony on the basis that it was inconsistent with the charging officer's report. Nor can we understand how the hearing officer's request for a supplementary report can suffice to satisfy the request for confrontation, at least in this type of case involving the complaint of a known and identified officer who filed the charge against Decker. This is not a case in which an inmate seeks to cross-examine witnesses whose identity must remain undisclosed, or whose information must remain confidential, in order to protect prison security.
In Jacobs v. Stephens, 139 N.J. 212, 652 A.2d 712 (1995), the Supreme Court held that inmates had to be advised of their right to confrontation and cross-examination in disciplinary cases. In Jacobs, the inmate was disciplined for "threatening another with bodily harm," id. at 215, 652 A.2d 712, based on the report of a corrections officer who perceived a confrontation "as a threat," id. at 216, 652 A.2d 712. Because Jacobs did not seek to confront or cross-examine any witness, and asserted only "that he was not informed of his right to confrontation and cross-examination and therefore he could not validly waive those rights," the Court affirmed the sanctions imposed. Id. at 222, 652 A.2d 712. The Court noted that even if Jacobs was not informed of this right, "he was not prejudiced because the testimony of his inmate witnesses did not support his position." Ibid. The Court made clear that "[i]n future cases, however, the inmate will be deemed informed because he must sign an amended Adjudication Form ... one of whose questions will be whether the inmate seeks confrontation or cross-examination," ibid., and that, pursuant to regulation, "confrontation and cross-examination may be refused only when they would be unduly hazardous to institutional safety or correctional goals." Id. at 221, 652 A.2d 712.
In McDonald v. Pinchak, 139 N.J. 188, 202-03, 652 A.2d 700 (1995), decided the same day as Jacobs, the Court remanded to the Department of Corrections for further proceedings in order to amplify the record with respect to whether the inmate requested the opportunity to cross-examine and confront the witnesses against him. The hearing officer's report did not reflect that McDonald had made such a request. Id. at 193, 652 A.2d 700. According to the Court's opinion, the relevant boxes were not checked and the words "not requested" were written on the relevant lines. Ibid. *1096 In considering the fundamental rights of inmates as detailed in the constitutional decisions and DOC regulations, Justice Garibaldi wrote:
Indeed, the daily interaction between inmates and prison officials can create a tense environment that requires special measures to ensure safety. Swift and certain punishment is one tool prison officials use to maintain order and discourage future misconduct by a perpetrator. Thus, a court must weigh any expansion or refinement of long-established due-process rights of prisoners against the safety of all the prisoners and of the corrections staff.
Despite the need to avoid aggravation of the already high level of confrontation inherent in a prison setting and to maintain personal security within the system, the United States Supreme Court in Wolff [v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)] held that inmates are entitled to certain protections. 418 U.S. at 556, 94 S.Ct. at 2974, 41 L.Ed.2d at 951. At a minimum, the United States Constitution requires that an inmate facing disciplinary charges receive: (1) a written notice of the alleged violation; (2) a written statement of the evidence relied on and the reasons for the disciplinary action taken; (3) a right to call witnesses and a right to present documentary evidence, when doing so would not be unduly hazardous to institutional safety or correctional goals; and (4) a right to assistance from a counsel substitute where the inmate is illiterate or the issues too complex for the inmate to marshal an adequate defense. Id. at 563-70, 94 S.Ct. at 2978-82, 41 L.Ed.2d at 955-59.
One year after Wolff, this Court decided Avant [v. Clifford, 67 N.J. 496, 341 A.2d 629 (1975)] and extended State due-process guarantees beyond the federal constitutional minimum. See 67 N.J. at 520, 341 A.2d 629. To protect an inmate's interest, we held that DOC must structure an informal hearing to "`assure that the [disciplinary] finding... will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the ... [inmate's] behavior.'" Id. at 523, 341 A.2d 629 (quoting Morrissey v. Brewer, 408 U.S. 471, 485, 92 S.Ct. 2593, 2601-02, 33 L.Ed.2d 484, 496 (1972) (omissions in original)). The hearing may be informal, but the procedures must determine the factual accuracy of the charges.
[Id. at 194-95, 652 A.2d 700.]
In discussing the right to confrontation and cross-examination, the Court stated:

N.J.A.C. 10A:4-9.14(a) provides that "if requested," the inmate shall be provided the opportunity for confrontation and cross-examination "where the Adjustment Committee or Disciplinary Hearing Officer deems it necessary for an adequate presentation of the evidence, particularly when serious issues of credibility are involved." Subsection (b) of that same provision further provides that a Disciplinary Hearing Officer or Adjustment Committee may refuse confrontation and cross-examination when they "would be unduly hazardous to correctional facility safety or goals."
That State regulation provides more protection than the federal constitution. In interpreting the Fourteenth Amendment, the United States Supreme Court determined that requiring cross-examination and confrontation as a matter of course would lead to the "considerable potential for havoc inside the prison walls" and would result in longer, possibly unmanageable, proceedings. See Wolff, supra, 418 U.S. at 567, 94 S.Ct. at 2980, 41 L.Ed.2d at 957. Thus, under the federal constitution, "adequate bases for decisions in prison disciplinary cases can be arrived at without cross-examination," and whether to permit cross-examination is left to the "sound discretion" of the prison officials. Id. at 568, 94 S.Ct. at 2980, 41 L.Ed.2d at 958.

*1097 Going beyond the minimum protections provided under the federal constitution, this Court in Avant determined that under the New Jersey Constitution, cross-examination and confrontation must be available to the inmate when "necessary for an adequate presentation of the evidence, particularly when serious issues of credibility are involved." 67 N.J. at 530, 341 A.2d 629. Expanding New Jersey's protection of inmates, this Court in Avant amended the standards "by requiring that in those cases where the Committee `deems' confrontation and cross-examination `[un]necessary for an adequate presentation of the evidence' the reasons for such denial be entered in the record and made available to the inmate." Id. at 532, 341 A.2d 629 (quoting Standard 254.274) (alterations in original). This New Jersey requirement exceeds those of most states, which often do not provide for a written explanation from the hearing officer of his or her denial of cross-examination and confrontation to an inmate. Columbia Human Rights Law Review, A Jailhouse Lawyer's Manual 509 (3d 1992).
This Court determined that such a requirement represented a "more precise accommodation of the competing interests and would afford greater flexibility than would an absolute bar to or requirement of confrontation and cross-examination." Avant, supra, 67 N.J. at 532, 341 A.2d 629. Indeed, requiring that prison officials record reasons for not permitting an inmate to confront or cross-examine witnesses deters administrative arbitrariness. Case Comment, "Prisoners' Rights-New Jersey Fairness and Rightness Standard-Procedural Requirements Delineated for Prison Disciplinary Hearings," 29 Rutgers L.Rev. 729, 752 (1976). Furthermore, compliance with the requirement would permit reviewing authorities to determine whether or not there had been a proper exercise of discretion. See id. at 752-53 n. 134.
Because N.J.A.C. 10A:4-9.14 not only complies with Avant but exceeds the requirements of Wolff, we find no need to expand or even to modify an inmate's right to confrontation and cross-examination.
[Id. at 197-99, 652 A.2d 700 (emphasis added).][2]
Given the lack of clarity of the record, with no statement of the hearing officer regarding the reason for refusing any request for confrontation, and the words "not requested" near the line relevant to cross-examination, the Court remanded "to DOC to clarify and amplify the record to determine whether McDonald did indeed request witnesses and whether he requested an opportunity to cross-examine and confront witnesses at the original hearing." Id. at 201, 652 A.2d 700; see also, e.g., Williams v. Department of Corrections, 330 N.J.Super. 197, 202-03, 749 A.2d 375 (App.Div. 2000).[3]
Here, the adjudication form reveals that no evidence was offered by an "informant" and that no "confidential material" was considered by the hearing officer or withheld from Decker. Two reports of Officer Dirmeitis were considered together with the written reports of two inmates offered by Decker. One of the inmates stated that he saw Decker "trip on something on the floor and [he] fell into the gate." The other reported that the officer closed the gate without warning, and that "Decker was closed into the gate" and "never touched it with his hands."
*1098 Decker testified on his own behalf and, according to the adjudication report, stated:
There were 50-60 [inmates] behind me shoving. I just got pushed into the gate by the flow of [inmates] behind me. I didn't do it intentionally I wouldn't do this.
With respect to the "[l]ist of adverse witnesses the inmate requests to confront/cross-examine including those requested through the investigator," the adjudication form indicates that the hearing officer "denied" Decker's request to call or cross-examine Dirmeitis. As noted at the outset of this opinion, the hearing officer gave the following reason:
An additional report will be requested from SCO Dirmeitis. Report recd 9/27/99. Report clearly shows the act was intentional, not accidental.
We hold that where the inmate is charged with a disciplinary infraction by virtue of conduct directed to or at a corrections officer and the matter turns on the credibility of the officer or the inmate, the inmate, upon request, is entitled to confrontation and cross-examination of the officer, at least in the absence of any reasons that justify an exception as a matter of prison security. This is not a case involving either a confidential informant or prisoner witnesses offered by the institution to sustain its case. It is a case that turns on whether the complaining officer is correct or incorrect in charging an inmate with conduct that was intentional. Stated differently, the hearing officer had to decide whether the inmate was credible in contending that the conduct was accidental. This is not the type of case that can be resolved exclusively by reference to the charging officer's report and his supplementary report designed to answer the inmate's defense. In these circumstances, the inmate is entitled to challenge the officer's perceptions by developing why the officer thought the incident was purposeful as opposed to accidental.
It may be that during the course of cross-examination some confidential information known to the officer may be relevant with respect to the officer's knowledge of the inmate's feelings or attitude towards him. If so, that type of issue can be appropriately developed as similar information is handled when obtained confidentially or from an informant. There is no suggestion in this record, however, that this case involves anything but a disagreement as to whether the event was an accident and the officer's conclusion from his observations at the scene that it was not.
Accordingly, the final administrative determination of the Department of Corrections is reversed, and the matter is remanded for further proceedings consistent with this opinion.[4]
NOTES
[1] We presume that Decker's reference to "two witnesses" was to Dirmeitis and the corrections officer who conducted the pre-hearing investigation.
[2] N.J.A.C. 10A:4-9.14(a) continues to provide for confrontation and cross-examination where "necessary for an adequate presentation of the evidence, particularly when serious issues of credibility are involved," and subsection -9.14(b) permits the hearing officer to "refuse confrontation and cross-examination when said would be unduly hazardous to correctional facility safety or goals."
[3] See also Negron v. New Jersey Dep't of Corrections, 220 N.J.Super. 425, 430, 532 A.2d 735 (App.Div.1987), which is outdated to the extent it is inconsistent with McDonald.
[4] We leave Decker's request to review video recordings of the mess hall area for further development on the remand.