**Joseph JAMES, Appellant,**

**v.**

**STATE of Alaska, DEPARTMENT OF CORRECTIONS, Appellee.**

No. S–13916.

Supreme Court of Alaska.

Sept. 2, 2011.

Joseph James, pro se, Hudson, Colorado, Appellant.

Marilyn J. Kamm, Assistant Attorney General, and John J. Burns, Attorney General, Juneau, for Appellee.

Before: FABE, WINFREE, and CHRISTEN, Justices.

*OPINION*

FABE, Justice.

## I. INTRODUCTION

After a disciplinary hearing, a hearing officer found Alaska prison inmate Joseph James guilty of the "low-moderate" infraction of "threatening another person with future bodily harm" at Red Rocks Correctional Center in Arizona. The determination was based entirely on an incident report written by a prison staff member who had not witnessed the incident. Instead, the report's author, G. Mathey, provided a hearsay account of a conversation between James and another staff member, Carl Richey. After exhausting his administrative remedies, James filed an appeal to the superior court. James argued that basing the finding of guilt solely on the hearsay written account constituted a violation of his due process rights. James also maintained that the failure to audio-record the disciplinary hearing violated due process.

The superior court affirmed the disciplinary determination. Because we conclude that James's due process right to confront and cross-examine adverse witnesses was violated during the disciplinary proceedings and that he was prejudiced by the failure to audio-record the disciplinary hearing, we vacate the disciplinary determination and remand for a new hearing.

## II. FACTS AND PROCEEDINGS

### A. Facts.

Joseph James is an Alaska prisoner [1] who was incarcerated by the State of Alaska,

---

1. James was convicted of attempted sexual as- sault in the second degree and three counts of

Department of Corrections (DOC) at Red Rocks Correctional Center in Arizona until late 2009. In an incident report dated July 18, 2007, James was written up for "[t]hreatening another person with future bodily harm." The incident report, written by a prison staff member, G. Mathey, related a conversation between James and another staff member, grievance coordinator Carl Richey:

> On July 17, 2007 at approximately 1400 hrs, Alaskan inmate [James] went to Mr. Richey's office to discuss complaints about Case Manager [ ] and Unit Manager [ ]. During the conversation James stated that some guys wanted to put a hit out on her and have her knee caps broken, but he stopped that. James also stated that he was going to put $20,000.00 on a reward for [a former state legislator] in Alaska because of the No Frills Bill. End of Statement.

Mathey, the author of the report, was not present during the alleged conversation between James and Richey. On July 23, 2007, James was given notice of a disciplinary hearing scheduled for July 30. The notice advised: "[Y]ou must inform the Disciplinary Committee/Hearing Officer in writing, at least 24–hours before the hearing, of witnesses you wish to call or evidence you intend to introduce at the hearing."

A disciplinary hearing was conducted on July 30 by a single hearing officer, Irene Flores. The disciplinary hearing was not recorded. According to James's account of the hearing, he denied that he was guilty of the charged infraction and "asked how come the writer of the report, and my witness, Mr. Rich[ey], are not here[.]" James alleges that he was told by Flores that "[t]hey are not necessary. They don't have to be here if they don't want to be."[2] James also claims that he asked why the hearing was not being

recorded, and Flores told him that a recording was not required. Flores found James guilty of the charged infraction and imposed discipline of 20 days of punitive segregation.

### B. Proceedings.

#### 1. The administrative proceedings

James appealed the disciplinary determination to the Red Rocks Correctional Center Superintendent. James argued that "punitive actions based upon hearsay evidence alone [are] a violation of due process." His appeal was denied by the Superintendent. James then appealed to the Alaska Director of the Division of Institutions, asserting that "[t]here was no evidence presented that said that [James] had physically threatened anyone" and that the actual conversation James had with Richey was "a lot different than the hearsay report of [Mathey]." The appeal to the Director was also denied.

#### 2. The appeal to the superior court

On October 22, 2007, James filed a notice of appeal in the superior court. He alleged that his due process rights had been violated because no "direct evidence" of a rule violation was presented at the disciplinary hearing, only "hearsay" and an "ex parte communication." In his brief filed April 6, 2009, James contended that the disciplinary hearing officer's reliance on the hearsay evidence in the incident report, along with Richey's and Mathey's absence from the disciplinary hearing after he had requested their presence, violated his due process rights.[3] James made several additional claims, including that Alaska policies and procedures required audio-recording his disciplinary proceeding.

DOC informed Superior Court Judge Craig Stowers that the recording of James's disciplinary hearing was "no longer available." The superior court ordered James to prepare a statement of the evidence and

---

sexual abuse of a minor in 1984. *James v. State,* 244 P.3d 542, 544 (Alaska App.2011). James was released on mandatory parole in 2005, but his parole was revoked later that year and he began serving additional time. *See id.* at 544–45.

**2.** DOC disputes James's version of these events, asserting that "Flores did not tell James that it was not necessary to have the writer of the

report present at the hearing, nor did she tell him that the writer of the report does not have to appear at the hearing if he does not want to appear."

**3.** James also maintained that Richey later refuted that James threatened physical harm to anyone.

testimony at the disciplinary hearing "from the best available means, including his recollection." James initially objected to preparing this statement, explaining that one of his claims was that the failure to record the hearing was itself a due process violation and that the superior court's order to replicate the record "incorporate[d] the assumption that an audio record had been made." The superior court responded that "[t]he effect of an unavailable audio-tape of the disciplinary hearing is the same whether there was never a tape, or it was misplaced or deliberately destroyed." James then filed his "Statement of Disciplinary Hearing," [4] and DOC submitted its own "Statement in Lieu of Transcript."

On September 17, 2009, DOC filed its brief. It argued that Flores properly relied on the incident report to find that James committed the infraction, that James failed to show that he was prejudiced by a third-party staff member writing the incident report, and that the record lacked evidence showing that James complied with the proper procedures to request Richey's presence at the disciplinary hearing. DOC maintained that James's other claims were waived because James failed to raise them during the administrative proceedings. James responded with a reply brief on October 2, 2009. Among other things, James stated that he had made a written request for Richey and Mathey to attend the disciplinary hearing and explained that "[t]his would account for why [he] was surprised that Rich[ey] and Mathey were not present at the hearing."

### 3. The superior court decisions

On March 4, 2010, Superior Court Judge Frank A. Pfiffner [5] found that "the record [was] incomplete on a critical due process issue," framing the issue as whether James had made a written request for Richey to attend the disciplinary hearing. The superior court thus ordered DOC "to recreate the record of whether James provided or attempted to provide written notice of his intent to call witnesses at the disciplinary hearing." The superior court stated that if James had "complied with the requirement for written notice of calling Rich[ey], his absence at the hearing would have violated James's due process rights."

DOC responded that the record did not contain any written witness requests from James and claimed that James had not brought up any written request during the disciplinary hearing. James filed a motion to correct the record, explaining that he had already filed a "Statement of Disciplinary Hearing," but the motion did not address whether he made a pre-hearing written request for witnesses. Judge Pfiffner affirmed the disciplinary determination on April 28, finding "no evidence that James requested witnesses" and thus concluding that no due process violation occurred.

### 4. Additional proceedings in the superior court

On May 6 James filed a motion to amend judgment, again arguing that the failure to record the disciplinary hearing violated due process. The motion also included James's affidavit, in which he alleged that he submitted a "cop-out" [6] "requesting the writer of the report, and Mr. Richey, to be present at [his] hearing" as soon as he received the incident report. James claimed:

> As there was no cop-out box for use of the inmates in the hole, the procedure was to place cop-outs in the space between the door and frame, for officers to pick up during their inspection rounds. I placed

---

**4.** It is unclear when James's statement reached DOC and the superior court. The statement is dated July 7, 2009 (one record copy is file-stamped July 13) but it was submitted to the superior court on July 27 with a motion to accept late filing; certificates of service show that the statement was sent to DOC on July 8 and August 3. DOC apparently received James's statement before it filed its own statement on September 14, 2009, but it appears that the superior court did not.

**5.** Judge Pfiffner was assigned to this case when Judge Stowers's caseload was transferred in January 2010.

**6.** A "cop-out" refers to a "Request for Interview Form." *See* State of Alaska Dep't of Corr. Policies & Procedures § 808.03c (2006).

the cop-out in the space between the door and frame that evening. When I awoke the following morning, the cop-out was not there. My reasonable assumption was that an officer had taken it and placed it with the inter-institutional disburs[e]ment mail.

James added that after receiving notice of his disciplinary hearing he "informed the officer that [he] had already put in a cop-out in which [he] requested the writer of the report, and Mr. Richey to be present at [his] hearing."

On June 16, 2010, the superior court denied James's motion as "substantively without merit and ... procedurally defective" because it was untimely and "submit[ted] new facts." James filed a notice of appeal on June 23.

## III. STANDARD OF REVIEW

■■■ Appellate judicial review of prisoner disciplinary proceedings is available when "issues of constitutional magnitude" are involved.[7] "Whether an inmate has received procedural due process is an issue of constitutional law that we review de novo."[8] Because the superior court "act[ed] as an intermediate appellate court in an administrative matter," we "independently review the merits of the administrative decision."[9]

## IV. DISCUSSION

James argues that he was denied due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and article I, section 7 of the Alaska Constitution. While inmates undeniably retain certain due process rights, we have adopted the United States Supreme Court's view that an inmate "is not entitled to the full panoply of rights due an accused in a criminal proceeding."[10] We have recognized that "to a significant degree disciplinary proceedings must be structured by prison authorities" and "[s]ubstantial institutional interests other than criminality are involved in disciplinary hearings."[11]

James argues that his due process rights were violated because: (1) the disciplinary determination was based entirely on hearsay in the incident report rather than on any direct evidence; and (2) the disciplinary hearing was not audio-recorded.[12] DOC responds that the disciplinary determination should be upheld because it was supported by "some evidence" in the record[13] and that an inmate is not denied due process when a disciplinary hearing for a minor infraction is not recorded. After a brief discussion of due process in the context of prison disciplinary

---

7. *Dep't of Corr. v. Kraus*, 759 P.2d 539, 540 (Alaska 1988); *see also* AS 33.30.295(b)(1) (providing that a disciplinary decision "may not be reversed ... unless the court finds that the prisoner's fundamental constitutional rights were violated in the course of the disciplinary process, and that the violation prejudiced the prisoner's right to a fair adjudication").

8. *Brandon v. State, Dep't of Corr.* (*Brandon II*), 73 P.3d 1230, 1233 (Alaska 2003) (citing *Abruska v. State, Dep't of Corr.*, 902 P.2d 319, 321 (Alaska 1995)).

9. *Button v. Haines Borough*, 208 P.3d 194, 200 (Alaska 2009).

10. *McGinnis v. Stevens* (*McGinnis I*), 543 P.2d 1221, 1226 (Alaska 1975); *see also Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

11. *McGinnis I*, 543 P.2d at 1227, 1228.

12. James states generally in his appellate brief that he "raised several due process violations

below" and "renews those claims herein." To the extent that James has cognizable arguments aside from those addressed by this opinion, they are waived both because they were not raised during the administrative proceedings and because they are insufficiently briefed on appeal. *See A.H. v. W.P.*, 896 P.2d 240, 243 (Alaska 1995) (holding that even for pro se litigants "[w]here a point is given only cursory statement in the argument portion of a brief, the point will not be considered on appeal"); *Trustees for Alaska v. State, Dep't of Natural Res.*, 865 P.2d 745, 748 (Alaska 1993) (providing that "a party must raise an issue during the administrative proceedings to preserve the issue for appeal").

13. We note that while federal due process requires only that inmate disciplinary decisions be supported by "some evidence in the record," *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454–56, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985), 22 Alaska Administrative Code (AAC) 05.420(b)(5)(D) provides that "the disciplinary tribunal shall, *by a preponderance of the evidence*, find whether the prisoner has committed the infraction." (Emphasis added.)

proceedings, we consider these two issues in turn.

## A. Due Process And Inmate Disciplinary Proceedings.

■ Inmates are afforded due process protections in relation to prison disciplinary proceedings.[14] We have adopted the United States Supreme Court's seminal decision in *Wolff v. McDonnell*, which established that in the context of a prison disciplinary proceeding:

> [D]ue process requires giving the inmate at least twenty-four hour advance written notice of the alleged violation; supplying the inmate with a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action; allowing the inmate facing disciplinary action to call witnesses and to present documentary evidence on his behalf when to do so will not be unduly hazardous to institutional safety or correctional goals; and allowing an illiterate inmate, or an inmate facing a complex issue, to have assistance in marshalling and presenting evidence and in comprehending the issues of the case.[15]

Beyond federal due process, we have "interpreted the due process guarantee under the Alaska Constitution more broadly than the United States Supreme Court has interpreted the identical provision of the United States Constitution."[16] In *McGinnis v. Stevens*, we held that in addition to the protections required in *Wolff*, under the Alaska Constitution a prisoner has a due process right to call witnesses and produce documentary evidence in his favor, subject to some limitations; to confront and cross-examine witnesses; and to have the entire hearing recorded "for purposes of administrative appeal and potential further appeal to the superior court."[17]

■ Because the due process protections enumerated in *McGinnis* are guaranteed to inmates facing "major disciplinary proceedings,"[18] we must first determine whether James's situation constituted a major disciplinary proceeding. We recognized in *McGinnis* that prisoners may be disciplined for either "minor disciplinary matters" or "major disciplinary determinations" and that "[a]ttempts to draw a hard and fast distinction between [the two] might well prove illusory."[19] But we went on to explain that "[w]hether a disciplinary determination is major or minor will ordinarily revolve around two factors: the relative gravity of the offense and the nature of the consequences that may result."[20]

DOC relies on *McGinnis*'s mention that in 1975 the Department of Corrections defined a minor infraction to include an "infraction . . . which does not constitute a direct danger to person or property, and is not punishable in a court of law."[21] DOC maintains that James's alleged statement that he was going to put a "hit" on a former state legislator "did not constitute a direct danger to [that person]." But DOC's reading of *McGinnis* is incorrect in light of our subsequent interpretations of that case, along with our later

---

**14.** *See Brandon II*, 73 P.3d 1230, 1234 (Alaska 2003) ("[U]nder the Alaska Constitution punitive segregation of a prison inmate following a major disciplinary infraction is a deprivation of liberty sufficient to trigger the right to due process.").

**15.** *McGinnis v. Stevens* (*McGinnis II*), 570 P.2d 735, 736 (Alaska 1977) (citing *Wolff*, 418 U.S. at 564–70, 94 S.Ct. 2963).

**16.** *Brandon II*, 73 P.3d at 1234; *see also Baker v. City of Fairbanks*, 471 P.2d 386, 401–02 (Alaska 1970) ("While we must enforce the minimum constitutional standards imposed upon us by the United States Supreme Court's interpretation of the Fourteenth Amendment, we are free, and we are under a duty, to develop additional constitutional rights and privileges under our Alaska Constitution. . . .").

**17.** *McGinnis II*, 570 P.2d at 737. Alaska inmates also have a right to counsel when the charged infraction may result in felony prosecution. *Id.*

**18.** *Id.* at 738. We previously acknowledged that our case law has not addressed what process is due in proceedings involving "less than major" infractions. *Brandon II*, 73 P.3d at 1235.

**19.** *McGinnis I*, 543 P.2d 1221, 1226 n. 6 (Alaska 1975).

**20.** *Id.*

**21.** *Id.* at 1227 n. 11.

conclusions that "major disciplinary proceedings" include disciplinary proceedings regarding "low-moderate" offenses that subject inmates to serious punishment such as solitary confinement and loss of good time credit. For example, we concluded in *Abruska v. State, Department of Corrections,* that allegations that a prisoner had committed a "low-moderate" offense under 22 AAC 05.400(d)(1)—exposing himself to a female corrections officer—triggered *McGinnis* due process protections.[22] And we recognized in *Department of Corrections v. Kraus* that a punishment of loss of good time for the "low[-]moderate" infraction of lying to a prison official amounted to a major disciplinary proceeding "in the sense of the term employed in *McGinnis*"[23] because the punishment imposed was among the most severe.[24]

Along with revocation of good time credit, *McGinnis* identified solitary confinement as one of the "most severe punishments" inmates face in disciplinary proceedings.[25] Indeed, in *Abruska,* even being restricted to a living module for seven days as punishment for a low-moderate infraction was sufficiently severe to amount to a major disciplinary proceeding.[26] Here, James was punished with 20 days of punitive segregation for the "low-moderate" infraction of "threatening another person with future bodily harm." Based on the seriousness of the charge and the severity of the punishment, we conclude that James faced a major disciplinary pro-

ceeding and was entitled to the due process protections set forth in *McGinnis.*

### B. James's Due Process Right To Confront And Cross–Examine Adverse Witnesses Was Violated.

■ James argued during the administrative and superior court proceedings that basing his disciplinary determination solely on "hearsay" evidence in the incident report was a due process violation.[27] James makes related claims on appeal, namely that Mathey and Richey were not at the disciplinary hearing and only hearsay evidence was presented. The gravamen of James's argument is that because the incident report was written by Mathey rather than Richey, and because neither Mathey nor Richey appeared at the disciplinary hearing, James did not have an opportunity to confront and cross-examine his accusers.[28] Though James characterizes this as an evidentiary issue, he also claims that it violated his constitutional rights, and whether certain testimonial evidence may be admissible under the rules of evidence does not resolve whether using such evidence against an accused is constitutionally permissible.[29] Thus, the relevant consideration on appeal is whether James's due process confrontation right was violated during the disciplinary proceedings.

■ An inmate's right to call witnesses in the inmate's defense and the right to confront adverse witnesses are separate, distin-

---

**22.** 902 P.2d 319, 320–21 (Alaska 1995). Abruska's punishment was one week of restriction to his living module. *Id.* at 321.

**23.** 759 P.2d 539, 540 n. 3 (Alaska 1988).

**24.** *Id.* (quoting *McGinnis I,* 543 P.2d at 1226 n. 6).

**25.** *McGinnis I,* 543 P.2d at 1226 n. 6.

**26.** *Abruska,* 902 P.2d at 320–21.

**27.** Specifically, James asserted that Richey should have written the incident report, that the conversation James had with Richey was different from Mathey's written account, that Richey and Mathey should have attended the disciplinary hearing, and that James was denied the opportunity to call witnesses.

**28.** We interpret pro se pleadings liberally. *See Breck v. Ulmer,* 745 P.2d 66, 75 (Alaska 1987)

(stating that "the pleadings of pro se litigants should be held to less stringent standards than those of lawyers").

**29.** *See Bullcoming v. New Mexico,* —— U.S. ——, 131 S.Ct. 2705, 2715, 180 L.Ed.2d 610 (2011) (cautioning that even "the 'obvious reliability' of a testimonial statement does not dispense with the Confrontation Clause") (quoting *Crawford v. Washington,* 541 U.S. 36, 62, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)); *Crawford,* 541 U.S. at 50–51, 124 S.Ct. 1354 (rejecting view that application of Confrontation Clause "depends upon the law of [e]vidence for the time being" because "[l]eaving the regulation of out-of-court statements to the law of evidence would render the Confrontation Clause powerless to prevent even the most flagrant inquisitorial practices") (internal quotation marks omitted).

guishable due process guarantees.[30] In explicitly extending the right to confront and cross-examine adverse witnesses to inmates, the *McGinnis* court cited "the premise that the rights to confrontation and cross-examination are fundamental prerequisites to a fair hearing."[31] As we explained, " '[c]ross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested,' and 'the main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination.' "[32] We recognized that in some instances allowing an inmate to confront accusers "could become erosive of authority and order in prison" but concluded that those concerns did not "justify a blanket denial on the part of inmates to confront and cross-examine adverse witnesses."[33] Ultimately, we held that "an inmate should have the right to call witnesses *and* the right of cross-examination unless there are compelling reasons ... for abridging those rights."[34] We confirmed the importance of the confrontation right in *Abruska*, where we determined that a disciplinary committee's failure to question the staff member who wrote the incident report when the author was at the disciplinary hearing constituted a due process violation.[35]

An inmate's due process right to confront accusers in disciplinary proceedings is specifically addressed by state regulations at 22 AAC 05.435. Among other things, the regulation provides that "if the accused prisoner ... requests the disciplinary tribunal to call as a witness the member of the facility staff who wrote the disciplinary report, the staff member *shall* appear as a witness" and the proceedings *shall* be postponed if the staff member is temporarily unavailable.[36] The provision also states that an accused may only be excluded from the hearing during witness testimony if the hearing officer orally notes the "reasons for denying confrontation" for the record.[37] Several other regulations regarding prison disciplinary proceedings also reflect a concern for an inmate's confrontation right. For example, 22 AAC 05.455(a) directs that an incident report may be considered as evidence and serve as the sole basis for a disciplinary determination only "[i]f a prisoner does not request the presence of the facility staff member who wrote the disciplinary report."[38] And as noted below, while state regulations provide that an inmate must request witnesses who will testify on the inmate's behalf with a 24-hour advance written notice, there is no similar procedural requirement for requesting the presence of adverse witnesses.[39] Pursuant to this regulation, the accused prisoner will have an opportunity to confront accusers unless the prisoner forgoes that option. In addition, we have required that "the disciplinary committee must question the staff member who wrote the disciplinary report

---

30. An inmate's right to call defense witnesses is guaranteed by both federal and state due process (*e.g., Wolff v. McDonnell*, 418 U.S. 539, 566, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *McGinnis I*, 543 P.2d at 1230), while the confrontation right is not protected by federal due process. *See, e.g., Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003), *cert. denied*, 540 U.S. 1114, 124 S.Ct. 1049, 157 L.Ed.2d 904 (2004); *Young v. Jones*, 37 F.3d 1457, 1460 (11th Cir.1994) ("[T]here is no constitutional right of cross-examination and confrontation of witnesses in a prison disciplinary hearing.").

 That these two related due process rights are distinct is reflected in the state regulations governing prison disciplinary proceedings. For example, 22 AAC 05.430 discusses "Defense witnesses and evidence at disciplinary hearing" while a separate section, 22 AAC 05.435 relates to "Prisoner's opportunity to confront accusers in a disciplinary hearing."

31. *McGinnis I*, 543 P.2d at 1231.

32. *Id.* (quoting *Davis v. Alaska*, 415 U.S. 308, 315–16, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)); *see also Crawford*, 541 U.S. at 50, 124 S.Ct. 1354 (noting that the "principal evil" which the Confrontation Clause was meant to counter was the "use of *ex parte* examinations as evidence against the accused").

33. *McGinnis I*, 543 P.2d at 1231.

34. *Id.* (emphasis added).

35. *Abruska v. State, Dep't of Corr.*, 902 P.2d 319, 322 (Alaska 1995).

36. 22 AAC 05.435(a) (1999) (emphasis added).

37. 22 AAC 05.435(b).

38. 22 AAC 05.455(a).

39. *See* 22 AAC 05.430.

*whenever* the inmate has requested the appearance of the writer of the report."[40] Another regulation, 22 AAC 05.410(b), provides that a disciplinary report "must be written by the staff member with the most direct knowledge of the incident." This requirement ensures that an inmate and the disciplinary hearing officer will be able to identify the inmate's accuser, and that the accuser has "direct knowledge" and can testify regarding facts and observations rather than report hearsay evidence.

▮ The superior court determined that James's due process rights had not been infringed because there was no evidence in the record that James complied with the 24–hour advance written notice requirement for requesting witnesses.[41] As an initial matter, the implied characterization of Richey and Mathey as James's own witnesses is incorrect. As explained above, Richey, as the officer with the most direct knowledge of the incident, should have written the incident report.[42] While failure to follow a state regulation is not a per se constitutional violation,[43] here the regulation at issue, designed to protect an inmate's opportunity to confront accusers, implicated James's due process rights. Mathey's writing the incident report was qualitatively different than the situation in *Brandon I*, where two officers were in an inmate's room at the same time and one found the contraband but the other ultimately wrote up the report.[44] We recognized that "[t]echnically, the officer who finds the alleged contraband is required to write

up the disciplinary report" but concluded that the other officer's writing the report did not violate due process because the inmate failed to show that any "deficiency ... in any way prejudiced [him]."[45] In contrast, James demonstrated that he was prejudiced by the fact that the report was not authored by Richey because he maintained that "[w]hat was actually said in the conversation with [Richey] is a lot different than the hearsay report of the security chief." Thus, James had the right to confront both Richey, who had the conversation with James that formed the basis of the incident report's charge and should have written the report, and Mathey, who did write up the account of the incident. Both were James's accusers for confrontation purposes.

The superior court was therefore incorrect in concluding that James was required to request Richey's and Mathey's presence with 24–hour advance written notice. While the state regulations provide that an inmate may call witnesses on the inmate's behalf by requesting those witnesses with a 24–hour advance written notice, there is no identical procedural requirement to make a written request for the presence of the inmate's accusers.[46] Rather, the author of the incident report "shall appear" if the accused prisoner requests the disciplinary tribunal to call that person as a witness.[47] The fact that Mathey improperly wrote the report in Richey's stead, in violation of the regulation's requirement, does not transform Richey into James's own witness.[48]

---

40. *Abruska,* 902 P.2d at 322.

41. *See id.* at 321 ("An inmate facing a major disciplinary hearing is entitled to call witnesses ... subject to certain limitations.").

42. *See* 22 AAC 05.410(b).

43. *See Brandon II,* 73 P.3d 1230, 1235 (Alaska 2003).

44. *Brandon v. State, Dep't of Corr. (Brandon I),* 865 P.2d 87, 89 (Alaska 1993).

45. *Id.*

46. 22 AAC 05.430(a) provides: "The accused prisoner may present witnesses ... *in the accused prisoner's defense* ... if written notice of the witnesses to be called ... is given to the disciplinary tribunal no later than 24 hours be-

fore the hearing, unless good cause is shown why this time requirement cannot be met." (Emphasis added.)

47. 22 AAC 05.435(a).

48. *See Bullcoming v. New Mexico,* —— U.S. ——, 131 S.Ct. 2705, 2716, 180 L.Ed.2d 610 (2011) (reasoning that "when the State elected to introduce [a witnesses's] certification, [that witness] became a witness Bullcoming had the right to confront"); *Davis v. Washington,* 547 U.S. 813, 826, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006) (explaining that the Confrontation Clause may not be "evaded by having a note-taking police [officer] *recite* the ... testimony of the declarant").

We note without deciding that even Mathey's testimony relating Richey's conversation with

James alleges that he requested Richey's and Mathey's presence at the beginning of the disciplinary hearing—he "asked how come the writer of the report, and my witness, Mr. Rich[ey], are not here" and was informed that "they don't have to be here if they don't want to be." Because Mathey and Richey were not James's own witnesses but James's accusers, and because James sought their presence at the disciplinary hearing, James's failure to comply with the 24–hour written notice required for calling witnesses "in the accused prisoner's defense" did not excuse Mathey and Richey from attending the hearing, and their absence violated James's due process confrontation right.

Our conclusion finds support in cases from New Jersey, which also extends the confrontation right to inmates in disciplinary proceedings when "necessary for an adequate presentation of the evidence, particularly when serious issues of credibility are involved."[49] One New Jersey court held that an inmate was entitled to confront the accusing officer where the outcome turned on whether the inmate had intentionally blocked a doorway, explaining that if an inmate's alleged infraction "turns on the credibility of the officer or the inmate" the inmate is entitled to confront and cross-examine the officer.[50] The court explained this type of case could not "be resolved exclusively by reference to the charging officer's report"; rather "the inmate is entitled to challenge the officer's perceptions by developing why the officer thought the incident was purposeful as opposed to accidental."[51] Three years later, a New Jersey court again held that a disciplinary hearing violated an inmate's due process confrontation right, reasoning:

> When [the inmate] was denied in-person confrontation and cross-examination . . . of

... his accuser, he was deprived of the fundamental opportunity to develop his defense by revealing the weaknesses in the accusation against him either on the basis of the accuser's credibility or otherwise. The hearing officer's decision was based on a credibility finding favorable to [the accuser]. It was a determination that could not be fairly reached without affording [the inmate] the opportunity to address the credibility issue effectively.... Nothing substitutes for the trier of fact's opportunity, in measuring truth or falsity, to view the witness's demeanor in presenting his allegations.[52]

Because Mathey and Richey were James's accusers, James did not have to do more than request their presence during the disciplinary hearing and their absence was a due process violation.

### C. James's Due Process Rights Were Violated By The Failure To Record The Disciplinary Hearing.

■ After initially reporting to the superior court that "the tape recording of [James's] disciplinary hearing [was] *no longer available,*" (emphasis added) the assistant attorney general representing DOC later conceded that James's disciplinary hearing had not been recorded.[53] James contends that the failure to record his disciplinary hearing was a due process violation. The superior court never specifically addressed this argument and referred to the "presence or absence of the tape" as a "collateral issue." DOC argues that James waived this issue by failing to raise it during the administrative proceedings. But James alleges that he asked the hearing officer why the hearing was not being recorded, and it is precisely

---

James may not have satisfied due process. *See Bullcoming,* 131 S.Ct. at 2716 (cautioning that the Confrontation Clause "does not tolerate dispensing with confrontation simply because the court believes that questioning one witness about another's testimonial statements provides a fair enough opportunity for cross-examination").

**49.** *Avant v. Clifford,* 67 N.J. 496, 341 A.2d 629, 647 (1975).

**50.** *Decker v. N.J. Dep't of Corr.,* 331 N.J.Super. 353, 751 A.2d 1094, 1098 (N.J.App.2000).

**51.** *Id.*

**52.** *Jones v. Dep't of Corr.,* 359 N.J.Super. 70, 819 A.2d 1, 4 (N.J.App.2003).

**53.** It is troubling that DOC represented to the superior court that the recording was "no longer available," implying that it had been misplaced or perhaps destroyed, when in fact no such recording ever existed.

because the hearing was not recorded that James cannot prove that he raised this issue at the administrative level.

The *McGinnis* due process protections include "the right to have the entire [disciplinary] hearing recorded for purposes of administrative appeal and potential further appeal to the superior court." [54] DOC contends that James's disciplinary hearing dealt with a "minor infraction" and so did not have to be recorded. But as we explained above, because James was accused of a "low-moderate" offense and punished with solitary confinement, under our case law this was a major disciplinary proceeding and James was entitled to all of the procedural protections identified in *McGinnis*.[55] We conclude that James had a due process right to have his disciplinary hearing recorded.

 But for us to reverse a disciplinary determination, an inmate must demonstrate both that a constitutional right was violated and that the violation prejudiced the inmate's right to a fair adjudication.[56] DOC argues that James did not indicate how the failure to record his disciplinary hearing was prejudicial to him, but we cannot agree. We have explained that "the requirement of a verbatim record will help insure that administrators . . . will act fairly[,] will furnish a more complete and accurate source of information than the 'written statement' requirement . . ., [and] will assist in facilitating a more intelligent review of the disciplinary proceeding." [57] In this case James and DOC were ordered to prepare statements of the evidence and testimony presented at the disciplinary hearing. James's statement differed in significant aspects from DOC's version, including a discrepancy over whether James asked why

Mathey and Richey were not present at the hearing and how the hearing officer responded to James's inquiry. Given that the primary purpose of recording a disciplinary hearing is to accurately preserve it for administrative appeal and appeal to the superior court, the failure to record the hearing in this case was prejudicial to James's right to a fair adjudication.

## V. CONCLUSION

We REVERSE and REMAND this case to the superior court with directions to order that the disciplinary determination be vacated and that a new disciplinary hearing be held and recorded with James being afforded the opportunity to confront and cross-examine his accusers.

CARPENETI, Chief Justice, and STOWERS, Justice, not participating.

---

54. *McGinnis II,* 570 P.2d 735, 737 (Alaska 1977). In *Carlson v. Renkes,* we stated that "[t]he loss of an administrative record is in itself not a violation of due process." 113 P.3d 638, 643 (Alaska 2005). But *Carlson* is distinguishable. This case involves an administrative record that was not simply "lost" but was never made. Moreover, *Carlson* involved a classification hearing, not a major disciplinary proceeding pursuant to *McGinnis*.

55. *See supra* Part IV.A. We note in passing that 22 AAC 05.420(b)(1), which lays out the requirement to audio-tape disciplinary hearings, applies

to all infractions apart from the "minor" infractions listed at 22 AAC 05.400(e). The regulation directs that the hearing officer "shall call the meeting to order and, unless the alleged violation is *a minor infraction under 22 AAC 05.400(e),* ensure that the proceedings are tape-recorded." (Emphasis added.)

56. *See* AS 33.30.295(b)(1).

57. *McGinnis I,* 543 P.2d 1221, 1236 (Alaska 1975) (agreeing that "a tape recording of the entire disciplinary proceeding is essential").