NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| RICHARD B. DEREMER III, | ) | |
| | ) | Supreme Court No. S-14647 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-10-07902 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| STATE OF ALASKA, | ) | AND JUDGMENT* |
| DEPARTMENT OF | ) | |
| CORRECTIONS, | ) | No. 1517 – October 1, 2014 |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Peter A. Michalski, Judge.

Appearances: Richard B. DeRemer III, pro se, Seward, Appellant. Matthias Cicotte, Assistant Attorney General, and Michael C. Geraghty, Attorney General, Juneau, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

I.    INTRODUCTION

Correctional officers conducting a random search of an inmate's locker discovered two pills stored in a paper cup. The inmate was charged with "hoarding

---

\* Entered under Appellate Rule 214.

medication," an infraction that the Alaska Department of Corrections categorizes as "high-moderate." Eight days prior to his scheduled disciplinary hearing in the matter, the inmate requested various items of evidence from his case manager. When the hearing began, the inmate was informed for the first time that none of his requested evidence would be made available to him. The inmate then asked to call a witness in his defense, a request that was denied as untimely because he had not listed the witness prior to the hearing. At the conclusion of the hearing, which was audio-recorded, the inmate was found guilty of the infraction and was sentenced to 20 days in punitive segregation. At some point the audio recording of the hearing was apparently lost or destroyed.

After exhausting his administrative remedies within the correctional facility, the inmate filed an administrative appeal in the superior court, which dismissed the inmate's claim without giving the inmate an opportunity to submit appellate briefing. The inmate appealed to this court, and we concluded that the superior court erred by dismissing the appeal on procedural grounds without first establishing a briefing schedule to address the inmate's due process claim on its merits. We provided the Department and the inmate the opportunity to file supplemental briefing addressing the merits of the due process issue.

We conclude that because of the nature of the offense and the seriousness of the punishment imposed, the disciplinary action against the inmate constituted a major disciplinary proceeding triggering due process protections. Applying our precedents in this area, we conclude that the Department's apparent loss of the audio recording was not a violation of due process because the Department did not dispute the inmate's re-created record and account of the procedures. But the Department's failure to provide the inmate with available evidence timely requested by the inmate was a violation of due process, and in the context of that violation, the Department's subsequent refusal to permit the inmate to call a defense witness prevented the error from being categorized as harmless.

We therefore reverse and remand with directions to order that the disciplinary determination be vacated.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

On January 30, 2010, corrections officers conducted a random search of inmate lockers in the Hudson Correctional Facility in Colorado and found two pills, "faded red in color, in a paper cup," in the locker assigned to Alaska inmate Richard DeRemer. According to the incident report prepared after the search, DeRemer admitted the pills were his, indicated they were Demerol, and claimed he had received them from the medical department. An additional report describing the incident indicated that "[it] was confirmed later by Nurse Washburn that the pills were [D]emerol and that it is a control[l]ed substance and should [have] been crushed."[1]

DeRemer was charged with "hoarding medication" under 22 Alaska Administrative Code 05.400(c)(8), which is a "high-moderate" infraction in Alaska's scale of minor, low-moderate, high-moderate, and major infractions.[2]  Specifically, 22 AAC 05.400(c)(8) prohibits the "intentional misuse of prescribed medication, such as hoarding medication or taking another person's medication." DeRemer was assigned a case manager for the disciplinary incident, and on February 9, 2010 — eight days before his scheduled disciplinary hearing — DeRemer submitted a request to his case manager for ten pieces of evidence "for review and examination prior to his disciplinary hearing on 2-17-10." DeRemer included various items in his request, including: (1) the seizure report, (2) photos of the pills, (3) laboratory test results for the pills, (4) a copy

---

[1]    As we discuss below, DeRemer claims that until he recently received the Department's supplemental record, he was unaware that the nurse allegedly identified the pills as Demerol.

[2]    *See* 22 Alaska Administrative Code (AAC) 05.400(a) (2012).

of his medication disbursement form, and (5) the tape recording of an administrative segregation hearing conducted shortly after the incident.[3]

A disciplinary hearing officer conducted a disciplinary hearing on the scheduled date. It appears that the hearing was audio-recorded. Because the Department later reported the disciplinary hearing record was "no longer available," the superior court ordered DeRemer to re-create the record of the hearing.

At the hearing, DeRemer pleaded not guilty, contending that the seized pills were ibuprofen and that he should have received the evidence he requested eight days before the hearing. With the exception of some Department policy documents relating to property seizure and the definition of a "working day,"[4] all of which DeRemer had acquired on his own, none of DeRemer's requested evidence was made available to him in advance of the hearing or at the hearing.[5] When DeRemer inquired about the evidence he had requested, his case manager responded, "I brought the list to [the disciplinary hearing officer] because I had no idea what I was supposed to do as a hearing advisor. [The hearing officer] told me that you could address these items here at the hearing."

---

[3] Administrative segregation proceedings are designed to separate an inmate from the general population "when the continued presence of the inmate . . . poses a serious threat to life, property, self, staff, or other inmates or to the security or orderly operation of the institution." *See* Department of Corrections Policies and Procedures (DOC) 804.01.V.A, *available at* http://www.correct.state.ak.us/commissioner/policies-procedures. In contrast, punitive segregation, as its name suggests, is intended to punish inmates when, after a hearing, they are found to have violated a rule. *See id.* 804.01.V.D.

[4] DeRemer considered this definition relevant because he alleged that the disciplinary hearing officer had not complied with a Department policy regarding the timing of notice of disciplinary hearings.

[5] The disciplinary hearing officer had the seizure report at the hearing and read it into the record, but it does not appear DeRemer was provided a copy.

DeRemer inquired as to why the "medical dis[bu]rsement form from [the] pill-line[,] which is a record of what meds [he] get[s] and how often [he] receive[s] them" was not available at the hearing. The hearing officer responded, "The reason it's not here is due to patient confidentiality as it applies to anyone's medical records. Yours included." DeRemer asked whether he could sign a form to release his medical information; the hearing officer said no.

The hearing officer offered to have the pills brought to the hearing and called the captain's office to request that the pills be presented; the captain's office indicated that the pills could not be located. DeRemer then requested that one of the facility's medical staff with experience in the medication dispensary room be called over to be asked the following questions: "1) Has anyone . . . ever received or been prescribed Demerol at this institution[?]" and "2) Has anyone ever ordered Demerol for this facility from any pharmaceutical supplier in the [two] months that this place has been open?" The hearing officer replied, "No. If you wanted witnesses, then you should have requested it in advance as required."[6]

DeRemer raised several procedural arguments at the hearing. He argued that he received the hearing notice form late under DOC Policies and Procedures 809.03.[7] The hearing officer ruled that the alleged late notice was "harmless error."

---

[6] The report relating to Nurse Washburn's alleged identification of the pills as Demerol was not discussed at the hearing. In his supplemental briefing, DeRemer claims that because he only recently received the Department's supplemental record in connection with this appeal, he was unaware that this report existed. He indicates that if he had known of Nurse Washburn and the alleged identification of the pills as Demerol, "[he] would have requested this alleged 'Nurse Washburn' be present at the hearing."

[7] The Department's policies require 48-hour advance written notice to the inmate of a scheduled appearance at a disciplinary hearing. *See* DOC 809.03.E.1; *see*
(continued...)

DeRemer argued that he needed the recording of his administrative segregation hearing "because [the case manager at that hearing] told [him] that [he] 'probably' would not be served with a disciplinary write-up for [the pill incident]." DeRemer also argued that he needed the recording of his administrative segregation hearing because his other case manager had "already found [him] guilty of this, [and] sentenced [him] to (8) days of segregation." He added that he had been placed in administrative segregation for longer than he was supposed to be, because the end of his time in administrative segregation had been scheduled for a weekend (when changes in cell assignments could not be performed) and because bad weather had kept staff from the facility. And according to DeRemer, he had served administrative segregation as punishment, an alleged violation of DOC Policies and Procedures 809.04.[8]

DeRemer further claimed that "[a]ny medications that can be abused in any way, shape, or form are crushed and floated in water at this facility. . . . If it's stronger than aspirin, Tylenol, or Ibuprofen it gets crushed and floated [before distribution to the inmates]." He also alleged that "[t]he only place in this entire institution that has those miniature paper cups is the medication dispens[a]ry room at the pill-line." He alleged that generally inmates must immediately take their medication in the pill line and then throw away their paper cups, all while under supervision. He claimed that he took his prescription medicine "that was crushed and floated" at the pill line and then "asked the pill-line nurse if I could have (2) Ibuprofen to take back to my unit with me to be consumed at around 11 pm when I go to bed." He continued, "The nurse put the (2) red, gel-coated Ibuprofen tablets into a new and dry paper cup for me [and] then told the

---

[7](...continued)
*also id.* 809.04.B.1.

[8]    *See* DOC 809.04.I ("Only a Disciplinary Committee/Hearing Officer may impose punishment on a prisoner for an infraction.").

officer outside with me what they were and that they were for me to take back to my unit for later. That is the only way a prisoner can walk away from pill-line with any kind of medication [and] a [dry] paper cup." DeRemer also claimed that possession of two pills "is not hoarding" and that an inmate could buy an entire bottle of ibuprofen in the commissary.

The hearing officer found DeRemer guilty of hoarding medication under 22 AAC 05.400(c)(8) and sentenced him to 20 days in punitive segregation, with 11 days credit for time already served in administrative segregation.[9] At the close of the disciplinary hearing, DeRemer indicated that he planned to appeal the decision.

### B. Two Levels Of Administrative Appeal

DeRemer appealed the decision to the superintendent of the facility, and then to the director of institutions.[10] In his appeals he focused on the denial of his request for evidence and on the fact that no photos of the pills were presented at the hearing. The superintendent denied DeRemer's first appeal, noting, "Reviewed case and do not see a reason to alter the decision." The director of institutions denied DeRemer's second appeal, writing "Appeal Denied!" on DeRemer's appeal form.

### C. Superior Court Proceedings

DeRemer filed an administrative appeal in the superior court on June 1, 2010. At DeRemer's request, the superior court waived the cost bond on appeal based on DeRemer's indigence. The superior court issued a notice of preparation of record for the administrative appeal in May 2011, which required DeRemer to pay for the record preparation costs. Later that month, the Department sent a letter to DeRemer requesting

---

[9] The nine days remaining were stayed pending the appeal process.

[10] *See* 22 AAC 05.480(e)-(h) (providing procedures for appeal from disciplinary decisions); *see also* DOC 809.06.VI.A-C (same).

$128 for preparation of the record. The Department also filed a "Motion For Order To Appellant To Prepare Statement" of the disciplinary hearing because the tape recording was "no longer available." The superior court granted the motion and directed DeRemer to "prepare a statement of the evidence of the proceedings. . . . Appellee State of Alaska shall then file its objections or submit proposed amendments . . . ." DeRemer opposed the motion, filing his "Opposition To Motion To Re-create Hearing Proce[e]dings" after the superior court had already issued its order granting the Department's request for a re-created record but before the order had reached him in the segregation unit. In response to the superior court's order, DeRemer re-created from memory the record of his disciplinary hearing. The State never challenged the accuracy of DeRemer's re-created record in the superior court.

In June 2011, about two months after the Department sent its letter requesting $128 for preparation of the record, DeRemer filed his "Motion To Reverse Disciplinary Conviction (with Prejudice)." He asked the superior court to reverse the disciplinary conviction against him on procedural grounds, citing the loss of the record of the hearing, the lack of witnesses at the hearing, the Department's demand for the $128 record preparation fee in light of the court's earlier indigency determination, and trouble he had experienced receiving his legal mail due to his transfer to another facility and the time he spent in segregation.

In September 2011 the superior court denied DeRemer's "Motion To Reverse Disciplinary Conviction (with Prejudice)." The superior court reasoned that "[a]ccording to AS 33.30.295, a disciplinary hearing cannot be reversed 'because of insufficient evidence if the record . . . shows that the disciplinary decision was based on some evidence that could support the decision reached.' " The superior court further reasoned that "[a]ccording to Appellant's re[-]creation of the record, the disciplinary report stated that '[i]nmate DeRemer admitted the pills were his and stated the pills were

Demerol.' This constitutes evidence that supports the decision reached." The superior court concluded that "[a]ppellant's subsequent claims fail to state 'specific facts establishing a violation of the prisoner's fundamental constitutional rights that prejudiced the prisoner's right to a fair adjudication.' " The superior court dismissed the case in November 2011.

The following month DeRemer filed a "Motion to Reopen Administrative Appeal," arguing that he complied with the order to re-create disciplinary proceedings and that he had requested "evidence that was exculpatory in nature and was denied." He also claimed that after the search he actually stated to the correctional officers who discovered the pills, "[i]t's not like they're Demerol or anything like that[.]" The superior court denied DeRemer's motion, concluding that it was untimely and that "[in addition to] the appellant's failure to meet timing requirements, the appellant's subsequent arguments are also without merit." The superior court reasoned that DeRemer's argument that the failure to produce evidence violated his due process rights was "a new argument that he did not raise in his Motion to Reverse Disciplinary Conviction (with Prejudice)." But DeRemer raised a number of these evidentiary arguments in his statement of points on appeal to the superior court in June 2010, which was filed about a year before he filed his "Motion to Reverse Disciplinary Conviction."

Finally, DeRemer filed a motion for reconsideration after the filing deadline. In his motion, DeRemer cited the superior court's delay in considering his appeal and challenged the superior court's conclusion that the incident report was sufficient to uphold the disciplinary action. The superior court accepted DeRemer's motion despite his filing it late, but denied it on the merits.

DeRemer appealed to this court, and we issued an order on August 23, 2013 in which we concluded that the superior court erred in dismissing the appeal on procedural grounds and in failing to provide the parties with an opportunity to brief the

merits of DeRemer's due process appellate claims.[11] Because the Department's brief to us addressed only the propriety of the dismissal and not the due process issue, we provided the Department with an opportunity to file supplemental briefing, and permitted DeRemer to respond with his own supplemental briefing.[12]

## III. STANDARD OF REVIEW

Alaska Statute 33.30.295 governs the review of prisoner disciplinary decisions and provides in relevant part:

> (a) A prisoner may obtain judicial review by the superior court of a final disciplinary decision by the department only if the prisoner alleges specific facts establishing a violation of the prisoner's fundamental constitutional rights that prejudiced the prisoner's right to a fair adjudication. . . .
>
> (b) A disciplinary decision may not be reversed
>
> (1) unless the court finds that the prisoner's fundamental constitutional rights were violated in the course of the disciplinary process, and that the violation prejudiced the prisoner's right to a fair adjudication;
>
> (2) because the department failed to follow hearing requirements set out in state statutes and regulations, unless the prisoner was prejudiced by the denial of a right guaranteed by the Alaska Constitution or United States Constitution; . . . or
>
> (3) because of insufficient evidence if the record described in (a) of this section shows that the disciplinary decision was based on some evidence that could support the decision reached.

---

[11] *See DeRemer v. State, Dep't of Corr.*, 307 P.3d 975, 978 (Alaska 2013).

[12] *Id.* at 979.

Thus "[a]ppellate judicial review of prisoner disciplinary proceedings is available when issues of constitutional magnitude are involved."[13]  And we review de novo "[w]hether an inmate has received procedural due process."[14]  Because the superior court acted as an intermediate appellate court in an administrative matter, we "independently review the merits of the administrative decision."[15]

## IV.  DISCUSSION

### A.  DeRemer's Disciplinary Action Constituted A Major Disciplinary Proceeding Triggering Due Process Protections Under *McGinnis v. Stevens*.

DeRemer contends that his rights were violated under article I, section 7 of the Alaska Constitution because he was not given a fair hearing.  Article I, section 7 of the Alaska Constitution provides:  "No person shall be deprived of life, liberty, or property, without due process of law.  The right of all persons to fair and just treatment in the course of legislative and executive investigations shall not be infringed."  In *McGinnis v. Stevens*, we held that "an inmate in a major disciplinary proceeding is not entitled to the full panoply of rights due an accused in a criminal proceeding," but we also enumerated an inmate's core due process rights.[16]  Citing the United States Supreme Court's decision in *Wolff v. McDonnell*,[17] we summarized an inmate's due process rights in major disciplinary proceedings as follows:

---

[13]     *James v. State, Dep't of Corr.*, 260 P.3d 1046, 1050 (Alaska 2011) (citation and internal quotation marks omitted).

[14]     *Id.* (citation and internal quotation marks omitted).

[15]     *Id.* (citation and internal quotation marks omitted).

[16]     543 P.2d 1221, 1226 (Alaska 1975).

[17]     418 U.S. 539 (1974).

[W]e have held that Alaskan prisoners are entitled, under the Alaska Constitution, to all due process rights enunciated in *Wolff*. Further, we have concluded that Alaska's constitution requires greater due process protections than the United States Constitution in the following respects: a prisoner has the right to counsel in conjunction with major disciplinary proceedings when felony prosecution may result; the right to call witnesses and produce documentary evidence in his favor (subject to the limitations discussed previously); the right to confront and cross-examine witnesses; and the right to have the entire hearing recorded for purposes of administrative appeal and potential further appeal to the superior court. In the following aspects, we agree with the United States Supreme Court's decision in *Wolff* and find that the Alaska Constitution affords an inmate of our penal system no greater protection than the United States Constitution: a disciplinary proceeding is not a criminal proceeding, thus the inmate has no automatic right of appeal to the courts of Alaska; the standard of proof, in disciplinary hearings, of violation of prison rules is not "beyond a reasonable doubt[]"; and, while the inmate is entitled to a fair and impartial hearing, it is not constitutionally impermissible for the hearing to be conducted by employees of the prison system.[18]

Because *McGinnis* provides that these due process protections apply to inmates facing "major disciplinary proceedings,"[19] we first must determine whether the proceeding against DeRemer was such a proceeding. We conclude that it was.

We have previously explained that "prisoners may be disciplined for either 'minor disciplinary matters' or 'major disciplinary determinations' and that '[a]ttempts

---

[18]    *McGinnis*, 543 P.2d at 1236-37 (citing *Wolff*, 418 U.S. 539 (1974)).

[19]    *See id.*

to draw a hard and fast distinction between [the two] might well prove illusory.' "[20] But we have also explained that "[w]hether a disciplinary determination is major or minor will ordinarily revolve around two factors:  the relative gravity of the offense and the nature of the consequences that may result."[21]  We have concluded that " 'major disciplinary proceedings' include disciplinary proceedings regarding 'low-moderate' offenses that subject inmates to serious punishment such as solitary confinement and loss of good time credit."[22]

For instance, we decided in *James v. State, Department of Corrections* that a punishment of 20 days in punitive segregation for the "low-moderate" infraction of "threatening another person with future bodily harm" triggered the *McGinnis* due process protections.[23]  We recognized in *Abruska v. Department of Corrections, State of Alaska* that a major disciplinary proceeding under *McGinnis* occurred when an inmate committed a "low-moderate" infraction by exposing his genitals to a female corrections officer and was punished with a one-week restriction to his living module.[24]  And in *Department of Corrections v. Kraus*, we concluded that punishment of a loss of good time credit for the "high[-]moderate" infraction of striking another prisoner and the "low[-]moderate" offense of lying to a prison official constituted major disciplinary

---

[20]     *James*, 260 P.3d at 1051 (quoting *McGinnis*, 543 P.2d at 1226 n.6).

[21]     *Id.* (quoting *McGinnis*, 543 P.2d at 1226 n.6) (internal quotation marks omitted).

[22]     *Id.* at 1052; *see also Brandon v. State, Dep't of Corr.* (*Brandon II*), 73 P.3d 1230, 1231-35 (Alaska 2003) (reviewing for due process violations an inmate's disciplinary action involving a "high-moderate" infraction and punitive segregation).

[23]     *James*, 260 P.3d at 1052.

[24]     902 P.2d 319, 320-21 (Alaska 1995).

proceedings because the loss of good time credit was among the most severe punishments that could be imposed at an administrative level.[25] Thus in determining whether a disciplinary action constitutes a "major disciplinary proceeding," we consider "the relative gravity of the offense and the nature of the consequences that may result."[26]

Here, the incident report charged DeRemer with the "high-moderate" infraction of "hoarding medication." The penalties for "high-moderate" infractions include reprimand, suspension of activities, confinement in punitive segregation or quarters, restitution, and forfeiture of statutory good time credit.[27] And in fact DeRemer was sanctioned with 20 days in punitive segregation, with 11 days credit for time he had already served in administrative segregation. Because the infraction was "high-moderate" and DeRemer's punishment was one that we have deemed severe, the disciplinary action here was a "major disciplinary proceeding" triggering due process protections.[28]

## B. DeRemer's Due Process Rights Were Not Violated By The Department's Failure To Preserve The Recording Of His Hearing.

DeRemer argues that the Department's failure to maintain the audio recording violated his rights to a fair and impartial hearing.[29] He contends that the

---

[25]    759 P.2d 539, 540 n.3 (Alaska 1988).

[26]    *James*, 260 P.3d at 1051.

[27]    *See* 22 AAC 05.470 (punishment); *see also* DOC 809.02.VII.F.2.a-f (prohibited conduct and penalties).

[28]    *See McGinnis v. Stevens*, 543 P.2d 1221, 1226 (Alaska 1975).

[29]    The legislature has expressed particular concern for prisoners' due process rights by providing a unique remedy for procedural violations in disciplinary hearings that implicate constitutional rights: Under AS 33.30.295(b)(2), a disciplinary decision
(continued...)

superior court "seems to have disregarded the rest of the 're[-]creation of the record' and chose to only acknowledge what DeRemer quoted from the Disciplinary report." The Department does not directly address the due process issue, focusing instead on the superior court's authority to order DeRemer to re-create the record. We conclude that DeRemer's due process rights were not violated by the Department's failure to preserve the audio recording.

We held in *McGinnis v. Stevens* that an inmate has "the right to have the entire hearing recorded for purposes of administrative appeal and potential further appeal to the superior court."[30] Concluding that a tape recording of the entire disciplinary proceeding is "essential," we reasoned that "the requirement of a verbatim record will help insure that administrators faced with possible scrutiny by state officials and the public, and even the courts when it is asserted that fundamental constitutional rights may have been abridged, will act fairly."[31]

---

[29](...continued)

may not be reversed "because the department failed to follow hearing requirements set out in state statutes and regulations, unless the prisoner was prejudiced by the denial of a right guaranteed by the Alaska Constitution or United States Constitution." The Department's policy on this matter provides that

> [t]he institution shall keep the tape recorded proceedings of the disciplinary hearing for 60 days after the final departmental decision on administrative appeal or the time frames for appeal have expired, whichever occurs first. If the prisoner appeals the decision to the court, the tape recording must be kept until all judicial proceedings are complete.

DOC 809.04.K.1.

[30]    *McGinnis*, 543 P.2d at 1236.

[31]    *Id.  Accord James*, 260 P.3d at 1055-56 (concluding that an inmate's due

(continued...)

But here DeRemer re-created a transcript of the disciplinary hearing line by line, and the Department did not dispute DeRemer's account. DeRemer was permitted to convey his version of the events without hindrance, and he has not identified any prejudice resulting from the absence of the audio recording. As a practical matter, DeRemer's re-created transcript served the same function as a verbatim audio recording. We therefore cannot agree with DeRemer that the Department's failure to preserve the audio recording violated his due process rights.[32]

## C. The Department's Failure To Provide DeRemer At Least Some Of The Evidence That He Requested Was A Violation Of Due Process.

22 AAC 05.430(a) governs defense witnesses and evidence in prison disciplinary hearings. The regulation provides:

> The accused prisoner may present witnesses and other evidence in the accused prisoner's defense . . . if written notice of the witnesses to be called or evidence to be admitted

---

[31](...continued)
process rights and statutory right to a fair adjudication were violated when the Department failed to provide an audio recording and there were significant differences between the inmate's and the Department's re-created accounts of the disciplinary hearing).

[32] It is troubling that the Department, in its supplemental briefing, has now decided to challenge one aspect of DeRemer's account, arguing that DeRemer's claim that he received ibuprofen from the pill line is "not credible" because the "reconstructed hearing transcript, which was not filed until nearly two years after the hearing, contains the first recorded instances of [this claim]." Not having disputed this issue below, the Department may not do so now. *See Kaiser v. Umialik Ins.*, 108 P.3d 876, 881 (Alaska 2005). And we note that if the Department had disputed DeRemer's account below, our due process analysis might have come out differently: When there are factual issues in dispute, the procedure requiring an inmate to re-create the transcript may not reliably guarantee the inmate's due process rights, as such transcripts may inevitably be less credible than the verbatim transcript that we have previously held to be "essential." *See McGinnis*, 543 P.2d at 1236.

is given to the disciplinary tribunal no later than 24 hours before the hearing, unless good cause is shown why this time requirement cannot be met.[33]

We held in *McGinnis* that in major disciplinary proceedings, an inmate is entitled to "the right to call witnesses and produce documentary evidence in his favor."[34]

DeRemer asked his assigned case manager for his list of documentary evidence eight days before the disciplinary hearing, complying with the advance notice requirement for evidence under 22 AAC 05.430(a). His list included, among other items: (1) the seizure report, (2) photos of the pills, (3) laboratory test results for the pills, (4) a copy of his medication disbursement form, and (5) the tape recording of his administrative segregation hearing. At the disciplinary hearing he focused on the requested photos of the pills and his medical forms from the pill line. When DeRemer inquired during the hearing about the evidence he had requested, his case manager responded: "I brought the list to [the disciplinary hearing officer] because I had no idea what I was supposed to do as a hearing advisor. [The hearing officer] told me that you could address these items here at the hearing." But at the hearing, DeRemer was not permitted to review or present any of the evidence that he had requested, other than the policy documents that he had obtained himself.

Several items DeRemer requested could have bolstered his version of the incident and assisted him in presenting a defense. In particular, photos of the pills, if any existed, and a copy of his medication disbursement records from the pill line would have been relevant to his claim that the pills were ibuprofen and that he legitimately possessed

---

[33]    22 AAC 05.430(a).

[34]    *McGinnis*, 543 P.2d at 1226; *cf. Brandon v. State, Dep't of Corr.* (*Brandon II*), 73 P.3d 1230, 1231-35 (Alaska 2003) (concluding that there was no due process violation in a case tried by a single hearing officer when inmate had not *requested* evidence or witnesses).

them. A copy of the initial incident report would have enabled him to challenge the report's assertions.[35] Denying DeRemer this important documentary evidence severely limited his ability to challenge the allegations underlying the disciplinary action. Piling on the missteps, the Department also seems to have lost or destroyed the pills.

DeRemer was not informed until the time of the hearing that he would not be permitted to present his requested evidence. And at the hearing, he received inadequate justification for the absence of the requested evidence, in particular the hearing officer's explanation for why DeRemer could not present his own pill disbursement form. While there may not have been photographs of the seized pills, it is difficult to understand the disciplinary hearing officer's basis for denying DeRemer access to his own pill disbursement form. Although the hearing officer stated that DeRemer's right to medical confidentiality prohibited producing the form, DeRemer asked only for his own pill disbursement form — and any other patient names and identifying information presumably could have been redacted.

We need not detail which particular items of evidence must be provided in all cases, or even in this one, but it is clear that denying DeRemer access to *all* of his requested evidence, and providing only a vacuous justification for the denial of DeRemer's own pill disbursement form, prejudiced DeRemer's right to a fair adjudication within the meaning of *McGinnis*.[36]

---

[35] It is also troubling that until the Department recently provided a supplemental record in connection with this appeal, DeRemer was apparently unaware of the second incident report, which described Nurse Washburn's alleged identification of the pills as Demerol.

[36] *See McGinnis*, 543 P.2d at 1236-37; *see also James v. State, Dep't of Corr.*, 260 P.3d 1046, 1056 (Alaska 2011). Some of the requested items, such as the hearing officer's work schedule, were only peripherally related to the charges against DeRemer.

(continued...)

**D.** **Under The Circumstances, The Department's Denial Of DeRemer's Request To Call A Nurse As A Defense Witness Was A Further Violation Of Due Process.**

DeRemer argues that the hearing officer should have permitted his request to call a "pill-line" nurse to "identify the pills for what they truly were – ibuprofen." In major disciplinary proceedings, an inmate has "the right to call witnesses . . . in his favor."[37] We have indicated "that it is the 'exceptional case' where the [disciplinary committee] chairman should refuse to call a witness."[38]

Of course, DeRemer did not request any witnesses in advance, as required by 22 AAC 05.430(a). And ordinarily the untimeliness of a request would be a sufficient reason for the disciplinary hearing officer to deny the request. But here the denial followed an illegitimate rejection of all of DeRemer's discovery requests on the date of the hearing. Because the Department failed to reveal to DeRemer its decision to deny his requested discovery until the time of the hearing, and because the Department failed to provide DeRemer with the report mentioning Nurse Washburn's identification of the pills, DeRemer could not have recognized the need to substitute testimony about the facility's ordering and prescribing Demerol in place of his requested evidence. The Department first undermined DeRemer's ability to present a defense by denying him all

---

[36](...continued)
*See Brandon v. Dep't of Corr.* (*Brandon I*), 865 P.2d 87, 90 (Alaska 1993) (holding that chemical testing for alcohol content was not required when nothing presented called into question the officers' observations).

[37] *McGinnis*, 543 P.2d at 1226.

[38] *Brandon I*, 865 P.2d at 90 (quoting *McGinnis*, 543 P.2d at 1230) (concluding that the disciplinary committee's refusal to allow an officer's testimony denied the inmate his right to due process of law, where the inmate had timely asked to call as a witness the officer who instigated and supervised the search).

his requested evidence. The Department could have mitigated this error by permitting DeRemer to call a witness, but instead, by its mechanical application of 22 AAC 05.430(a), the Department compounded the problem. Under the circumstances, the Department's denial of DeRemer's request to call a nurse as a defense witness was a violation of his due process rights.

## V.    CONCLUSION

We REVERSE the superior court's dismissal of DeRemer's appeal and REMAND this case to the superior court with directions to order that the disciplinary determination be vacated. If a new disciplinary hearing is held, it must be recorded and the recording must be preserved, and DeRemer must be permitted to review his pill disbursement form and afforded the opportunity to present his timely requested evidence and witnesses.